J-S06031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.F., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.C., MOTHER | : | No. 2196 EDA 2021 |

Appeal from the Decree Entered September 23, 2021
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 2021-00004

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                     **FILED MARCH 16, 2022**

Appellant, K.C. ("Mother"), appeals from the decree entered in the Wayne County Court of Common Pleas, granting the petition of Appellee, Wayne County Children and Youth Services ("CYS"), for involuntary termination of Mother's parental rights to her minor child, S.F., Jr. ("Child"). We affirm.

The relevant facts and procedural history of this appeal are as follows. Child was born in April 2020. Mother has a "history of mental health issues," including bipolar disorder and schizophrenia. (**See** N.T. Hearing, 9/3/21, at 5; CYS's Exhibit 2, entered 9/3/21, at 3). S.F. ("Father") was convicted of aggravated indecent assault in 2020, and he subsequently received a five (5) to ten (10) year term of imprisonment. (**See** CYS's Exhibit 1, entered 9/3/21, at 1). Father is currently incarcerated at SCI-Phoenix. (**See** N.T. Hearing at

8).

The court adjudicated Child dependent on June 30, 2020, but Child remained in parents' home. (**See** Mother's Exhibit 3, entered 9/3/21, at ¶¶ 2-3). At that time, CYS developed a family service plan ("FSP"). (**See** N.T. Hearing at 11). Following Father's incarceration, however, CYS filed an emergency motion for modification of custody. CYS obtained legal custody of Child on January 25, 2021, and it placed Child in a pre-adoptive home. (**See** Petition for Involuntary Termination, filed 3/9/21, at ¶¶ 7-8). Thereafter, Mother demonstrated minimal compliance with her FSP goals including: 1) maintaining a clean and safe home; 2) meeting Child's basic needs; and 3) taking care of her mental health and following all mental health recommendations. (**See** N.T. Hearing at 13-15).

On March 9, 2021, CYS filed a petition for involuntary termination of Mother and Father's parental rights. The court conducted a termination hearing on September 3, 2021. At that time, the court received testimony from the CYS case worker, the psychologist who evaluated Mother, and the social worker who supervised Mother's visits with Child. On September 23, 2021, the court entered an opinion and final decree terminating Mother's parental rights.[1] The court found that Mother had demonstrated an unwillingness or inability to provide Child with essential parental care,

---

[1] The court also involuntarily terminated Father's parental rights, but he is not a party to the current appeal.

pursuant to 23 Pa.C.S.A. § 2511(a)(2). On October 21, 2021, Mother timely filed a notice of appeal and concise statement of errors.

Mother now raises two issues for this Court's review:

> Whether the trial court erred in concluding that [Mother] demonstrated an unwillingness or inability to provide the minor child with the essential parental care necessary for his physical or mental well-being and erred as a matter of law in determining that the termination of parental rights of [Mother] was warranted?

> Whether the trial court erred as a matter of law in determining that the termination of parental rights of [Mother] would serve the developmental, physical, and emotional needs and welfare of the minor child?

(Mother's Brief at 4).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

***In re Z.P.***, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting ***In re I.J.***, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> ***In re B.L.W.***, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

- 3 -

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYS filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the

- 4 -

child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P., supra*** at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of … her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

On appeal, Mother contends that she had moderate or substantial compliance with her FSP goals throughout the majority of CYS's involvement

with her family. Mother emphasizes that she has: 1) signed all releases for records and ensured Child's attendance at medical appointments; 2) maintained ownership of her home and continually resided there; 3) attended her psychological and parental fitness evaluations; and 4) complied with all mental health treatment recommendations. To the extent CYS relied upon the parental fitness evaluation as grounds for termination, Mother insists that the evaluation was performed a year prior to the termination hearing. Although Mother concedes that the evaluation showed she needed "support and assistance" to parent Child, Mother maintains that she was not excluded as a potential caregiver. (Mother's Brief at 14).

Further, Mother asserts that the trial court's conclusions in support of termination were "inconsistent with the record." (*Id*. at 15). Regarding the court's conclusions about Mother's inability to care for Child, Mother argues that her parenting skills improved while she attempted to comply with the FSP goals. Specifically, Mother notes that Child gained weight after she established a feeding routine. Mother also claims that there was an "overall significant improvement" in "affection between [Mother] and Child." (*Id.*) Mother concludes that CYS did not meet its burden of proof under Section 2511(a)(2), and termination of her parental rights is not in Child's best interests. We disagree.

"The bases for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to

affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re S.C.B.***, 990 A.2d 762, 771 (Pa.Super. 2010). Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. ***In re C.P.***, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** at 520 (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements

within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." **In re B.L.L.**, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

**In re B., N.M.**, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Instantly, the CYS case worker provided the following summary of the agency's concerns regarding Mother's ability to parent:

> Our observations are that we do not believe that [Mother] has the ability to meet [Child's] basic needs at this time. Prior to out of home placement, she was feeding him expired foods, she refused to listen to the recommendations of [the social workers] as well as [Father]. At the time, she was allowing [Child] to play with inappropriate items … that were not age appropriate for him, and she had also left [Child] alone in the bath while she had [gone] outside. Since placement, she's frequently prompted to focus on parenting tasks … such as feeding. She does not demonstrate an understanding of [Child's] cues for hunger, sleep, attention, or play and she has to be [prompted] on how to [soothe]

[Child] when he is upset.

(N.T. Hearing at 14).

The psychologist who evaluated Mother expressed additional concerns:

> I think because of [Mother's] demonstrated dependency and history which involved some significant mental health concerns, including self-injury and multiple hospitalizations, I think the stability and safety of both her home and her care of her child is going to be highly dependent on who she is with. I think she will likely need other people in her life and my concern is that's a pattern established … that she would be at high risk for not making a wise choice for … another significant relationship that she would have this dependent personality pattern in.

(*Id.* at 48-49).

The trial court accepted this testimony and concluded that Mother lacked the capacity to parent Child:

> [T]he record demonstrates that Mother is unable to care for herself independently, and as such is unable to care for the minor child.
>
> * * *
>
> Mother's reliance on Father—a convicted sex offender—on making decisions on her behalf is concerning. When [caring for] the minor child, Mother has continued to demonstrate a lack of responsibility because she ignores the minor child by being on the phone.
>
> * * *
>
> The minor child has demonstrated a diminished and near non-existent bond with Mother as the minor child continuously cries before and during visits with Mother. Further, Mother is unable to parent alone and is reliant on Father and Mother will only become less independent due to Father's incarceration. Based upon the testimony presented at the hearing, this [c]ourt finds that [CYS] presented clear

and convincing evidence to support the termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2).

(Trial Court Opinion at 6-7). On this record, the court correctly determined that Mother's incapacity caused Child to be without essential parental care, and the causes of the incapacity cannot or will not be remedied. *See Interest of Lilley, supra*.

In addition to the court's analysis of Mother's parenting skills, we also note that Mother failed to comply with certain FSP objectives, including the maintenance of a clean and safe home for Child. The CYS case worker testified about Mother's noncompliance with this objective as follows:

> The home is cluttered and not baby proofed. There's a strong smell of body odor, cigarette smoke, as well as cat urine. Garbage was noted throughout the home and scattered on tables. [Mother] confirmed bed bugs as well as fleas in the home.

(N.T. Hearing at 14).

The case worker also discussed Mother's relationship with drugs and alcohol. Specifically, Mother brought a bottle of vodka to a July 29, 2021 visit with Child. (*See id.*) That same day, Mother tested positive for marijuana. (*Id.*) Regarding the vodka bottle, Mother explained "she was at a friend's house having some drinks the night prior and she did not want to leave that bottle because she had paid for it …." (*Id.* at 32). Regarding the positive test for marijuana, Mother "reported that she had been around somebody who had been smoking." (*Id.* at 30). Although CYS could perform additional testing to determine whether the result was due to secondhand smoke, such testing

was unnecessary because Mother "should not have even been around people that had been smoking marijuana." (*Id.*)

Additionally, the case worker testified that Mother and Child no longer shared a bond. (*Id.* at 24). Although Mother attended visits with Child, the case worker witnessed Mother's inability to provide Child with the support he needed:

> There were multiple occasions where [Child] was observed wanting [Mother's] affection, like going up to her wanting to be held [and], at one point in time, [Mother] had even like pushed him down off of her or not being able to [soothe] him appropriately…. [Child] just no longer [sought] her affection in that way.

(*Id.* at 24). In comparison, Child is bonded with his current foster parents, who want to adopt him. (*Id.* at 20-21).

Here, terminating Mother's parental rights would not destroy an existing, necessary, and beneficial relationship for Child. *See In re Z.P.*, *supra*. Based upon the foregoing, the record supports the court's conclusion that clear and convincing evidence supported termination of Mother's parental rights under Sections 2511(a)(2) and (b). *Id.* Consequently, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2022